The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Our next case is number 19-4307, United States v. Hough, if I've pronounced that correctly. The appellant is represented by Ms. Tarleton. Yes, Your Honor. I am, Your Honor. Thank you. Good morning. Good to have you here. Thank you. May it please the Court. Jackie Tarleton for Jeremy Hough. Jeremy Hough was sentenced to 78 months in prison for possessing a firearm without using it, brandishing it, or discharging it. That sentence resulted in large part from a sentencing enhancement for using a firearm in connection with another felony. But Mr. Hough denies committing that other felony, which was weeks prior, involved a completely different firearm, and was a completely different kind of offense. And the district court clearly erred in finding, without any evidentiary support, that Mr. Hough disposed of the firearm from the shooting and got the firearm he was arrested for possessing, quote, because he was aware of what he had done on the day of the shooting. The Sentencing Commission instructs that two offenses are in connection with one another when they are part of a single episode, spree, or ongoing series of offenses. And the Commission instructs courts to consider three things before applying that in connection with enhancement. They are similarity, regularity, and temporal proximity, or time interval. With regard to similarity, the offenses in this case are completely dissimilar. They involve, in one case, a shooting, and in another case, a simple possession offense. They occurred in different locations with different guns. There were no other common facts. With regard to regularity, as the Sixth Circuit explained in Amerson, the government presented only two incidents, the shooting and the felony possession offense, and that is the bare minimum for purposes of regularity. This is Judge Wynn. Let me go to what I think is the heart of this question, which I think is a hurdle you may need to cross first, and that is the homelessness inquiry. Because even if we do find procedural error with homelessness, we still need to address the other issues. And in this instance, the district court went on to say it would impose the same sentence as an alternative variant sentence here. And that's language that we and others have looked at and said, well, you know, if you're going to do the same thing, even if it was error, even if the purpose of departure was error, and the guideline enhancement was error, then, you know, there's no need to go there, because the judge has given this alternative variant. So why does that not make it harmless, then, a matter that moves it beyond the inquiry on the enhancement and the help with the possession? Because, Your Honor, the government has the burden to show that any error is harmless beyond a reasonable doubt. And here, I don't think that it can properly be said that if the district court had not believed that Mr. Huff had participated in the shooting, that it would have imposed the same sentence. So I think that... Let me make sure what you're saying. Isn't that what the district court said he did? He said, you know, even if I didn't consider this, I'd give him the same sentence. I mean, so you're saying, essentially, the district court didn't mean what it says? I don't think that this court can credit an articulation by the district court that it would have sentenced someone for possessing a firearm the same way, with the same sentence, if it believed that someone had committed murder or not. I don't think that's consistent with this court's 3553A cases, and I don't think it's consistent with a consideration for the history and characteristics of the offender or the circumstances of the offense. So, no, I don't believe that that can be credited beyond a reasonable doubt. Of course, if the district court does want to reach the same conclusion, it can make an attempt to justify the extent of that variance on remand. But I don't believe that in a situation where you have a defendant who are otherwise similarly situated, one is found to have committed a murder and the other is not, but simply threw a firearm into the bushes. I don't think that those two defendants would be sentenced similarly under this court. This is Judge Diaz, following up on Judge Wynn's question. So, under the 3553A factors that the court would consider in fashioning an alternative variance sentence, I don't think it's correct to say that the court couldn't consider your client's alleged involvement in that prior murder, even if it appeared in finding it to be related conduct. I suppose the court could consider that for what it was worth, but there was more here than that. I mean, it was the defendant's deplorable prior record history, some of which was not properly scored. The district court also referenced the defendant's less than, as he put it, contumacious behavior in court as apparent disrespect for the proceedings, which, of course, we can't see because ours is a cold record. So it wasn't like he just said, if I'd made a mistake, I would have been imposed the same sentence anyway. He actually went through the factors and explained why, in his judgment, given all the other relevant considerations that a district court is entitled to weigh in deciding the appropriate sentence and assessing your client's arguments for why a guideline sentence is more appropriate. He came to the same judgment under that alternative view, and it just seems hard to me to see how we can upset that balance, which is almost always left at the discretion of the district court. I think, Your Honor, that respectfully, the shooting offense is the elephant in the room, whether or not the district court purported to rely on it in significant respect under the 3553A factors. I would note that the other factors that the court cited, including the unscored offenses, the unscored offenses he's referring to were more than 13 years prior to sentencing in this case, and they resulted, three of those cases were misdemeanors, and they occurred when Mr. Huff was 22 years old or younger. So I don't think that that is sufficient to justify what would have represented a tripling of the advisory guideline range if the district court had erred in applying the in connection with enhancement. So I don't think that under this court's cases that require the district court to justify both the fact of the variance and the extent of the variance that the district court's reasoning is sufficient in this case. I think that's especially borne out when you look at the way that the evidence was presented in this case. The government had every opportunity to bring any witnesses it would like, introduce any evidence from what it believed to be the murder in state court, but it didn't do so. Instead, it brought in an agent who had only begun to review these records the day before. This is not someone who had interviewed Mr. Huff or Mr. Boyd, wasn't someone who had interviewed any of the witnesses in this case. At JA-70, he said that he started going over reports the day before the hearing. At JA-74, he explained that he wasn't there at the date of the photo lineup at which Mr. Boyd allegedly identified Mr. Huff. He explained that he hadn't seen the lineup, and he didn't see the photographs. He did not see the cell phone records that the government demonstrated that Mr. Huff had been at the scene of the shooting. That's at Joint Appendix 80. He also saw none of the firsthand statements that were made. That's at JA-81. I don't think this is a situation where this court is meaningfully deferring to the district court's credibility determinations. I'm sorry to interrupt, but you're making a very passionate and eloquent argument that might win the day in a criminal trial if there was a requirement to find proof beyond a reasonable doubt. Of course, that's not a requirement in a sentencing proceeding. The district court simply needed to be satisfied by a preponderance of the evidence that Mr. Huff committed the murder. You highlighted a number of issues that perhaps lead to some inconsistencies in the evidence. But there was also, as I understand it, evidence that the victim identified Mr. Huff in a photo lineup before he died. That he had admittedly some, not all, of the characteristics that the victim described. And that your client's cell phone was present at the place and time of the murder. It seems to me that a district court could reasonably conclude, based on that and other evidence in the record, by a preponderance of the evidence that, in fact, your client committed the murder. And on appeal, we have to make a finding that that is clearly erroneous. I have to say that I think it's difficult for me, anyway, to come to that conclusion. The standard, Your Honor, is certainly by a preponderance. However, there's also a requirement that any evidence relied upon at sentencing bear sufficient indicia of reliability. And here, you're correct that Mr. Boyd allegedly identified Mr. Huff in a photographic lineup. But that was on the third interview. During the first two interviews, he gave no information. That's at Joint Appendix 75. And at that third interview, his description of the shooter included a lot of facts that don't apply to Mr. Huff. For example, that he was a male known as Hood, that he was 5'10 or 5'11, and that he had tattoos. Mr. Huff does not have an alias of Hood. He's 5'6 inches tall. He has no tattoos. And, again, we had no evidence presented at the sentencing hearing as to what kind of photographs were presented or whether there was any concern that the photographic lineup was unduly suggestive. There was also significant evidence by other witnesses. There were approximately 15 people at the scene of the shooting. None of them, with the exception of Mr. Boyd on that third interview, identified Mr. Huff, including the mailman who said that it was someone wearing a do-rag, Pickapoo, who said that it was two people who were both black, both wearing do-rags, Jose Lopez, who said it was, quote, a black guy with shoulder-length curly black hair with blondish tips. That's at JA 78 and 79. And with more than 15 people there, nobody other than Mr. Boyd identified Mr. Huff. And with respect to Mr. Boyd's alleged statements, all the district court had to rely on was the third-hand hearsay of Agent Baer, who had simply reviewed the reports of another officer. So this is not a situation where I believe that the district court had sufficient indicia of reliability to come to the conclusion that by a preponderance of the evidence Mr. Huff had participated in the shooting. I also think that... These proceedings, these types of proceedings always include hearsay, don't they? They can include hearsay, Your Honor, but I think hearsay would be a generous interpretation of what happened in this case. This is not a situation where you have the case agent describing the demeanor and statements of direct witnesses. This is a situation where you have an agent who has no familiarity with this case other than a cold-record review, testifying about facts he has no personal knowledge of and not even any sort of case-specific knowledge of prior to his review of those reports. I also think it's very significant that the district court purported to find as a fact, and I believe there's no question that this is clearly erroneous. This is at JA99. He found that Mr. Huff disposed of the firearm from the shooting and got the firearm he was arrested for possessing, quote, because he was aware of what he had done on the day of the shooting. That is supported by no evidence. The government never presented any indication that Mr. Huff had disposed of the firearm, the .380, from the shooting, gave no evidence on that point, nor did it provide any evidence on how Mr. Huff or when Mr. Huff acquired the firearm that was possessed in the felon in possession case at issue here. As we noted in our briefing, these were different guns. The gun that was involved in the shooting was a .380. The gun that was found at the felon in possession offense was a 9mm. The second gun had pink markings. There was no evidence of pink markings on the first gun. And the circumstances of the offenses were completely distinguishable. In the first offense, obviously, we're talking about a shooting that resulted in a murder. In the second offense, it was a gun that was simply thrown into the bushes. So those are two very different types of offenses. And even though these were two weeks apart, that is not sufficient evidence of contemporaneousness under Amerson, which finds that when the court is going to overcome a total lack of regularity or a total lack of similarity, it's going to have to have very significant evidence of temporal proximity, and that's usually a contemporaneous event. It cites the cases of Powell and Conway where firearms were possessed the same day of the offense that was deemed to be in connection with that felon in possession. Your Honors, in this case, the guideline range for Mr. Huff should have been 21 to 27 months. And after the district court heard only the statements of an agent who began to review the records the day before, he found by a preponderance of the evidence that Mr. Huff had committed that shooting, and in fact that, you know, which would be evidence of a consciousness of guilt, had disposed of the weapon to acquire the weapon in this case. That was completely unsupported in the record. Again, that's a JA-99. I don't believe that the district court can simply say whether or not this shooting was committed by Mr. Huff. I would impose the same sentence because I don't think that that properly accounts for this court's requirement that the district court justify the extent of any variance, which here, again, is trickle. Can I just be clear about that? The question is now whether or not, I don't think, whether or not, as I understand the district court judge's findings on the alternate variant sentence, his finding was if I made a mistake in the findings with respect to the enhancement, that is, whether or not this was related conduct. But there's a separate issue of whether or not the government actually proved that your client was involved in the murder. And certainly if he found that, the district court found that, independent of whether or not it was related conduct, the district court could consider that, right? The district court could consider that. But that's, again, where I think this finding, this erroneous, clearly erroneous factual finding of JA-99 is so important. Because if it were, in fact, proven by the government that Mr. Huff had disposed of the firearm used in the shooting, I think that would be evidence of consciousness of guilt, which would be additional evidence that Mr. Huff, in fact, committed the shooting that occurred in April. And I think that that would have provided additional evidence that Mr. Huff was involved, supporting the district court's ultimate factual finding on that issue. Because that central issue was based on a clearly erroneous factual finding, that's why I think vacature and remand is appropriate in this case, so that the district court can appropriately evaluate the evidence that was actually presented by the government, considering the fact that there's no evidence to support that at all. And we don't know from the district court's statements at the sentencing hearing how significant a factor that consciousness of guilt may have been. The district court did say that it found by a preponderance of the evidence that Mr. Huff was involved in the shooting, but it didn't explain exactly which evidence it found persuasive and how it reached that conclusion. So I think that vacature and remand is the appropriate course. Again, if the district court believes that it can get there without that evidence, it can say so on the record, and this court can evaluate that determination if it's appropriate at a later date. But I don't think that on this record, with such a significant, clearly erroneous factual finding, that this court can affirm what the district court did in this case. I also wanted to emphasize the Seventh Circuit's language in Ritsema, which I think is very helpful. It talks about the purpose of relevant conduct, and it states that the relevant conduct is allowed to be considered at sentencing so that the sentence can reflect the actual seriousness of an offense. Obviously, in the ordinary course, if the government wishes to prove that someone committed a crime, they need to charge it based on probable cause, prove it to a jury beyond a reasonable doubt, and ultimately a sentence can be imposed. Relevant conduct is certainly a significant exception to that ordinary requirement, but I don't think that under the criteria given by the commission that an unrelated shooting with a different gun, with vigorously contested evidence that will, in fact, be tried in state court and sentenced if appropriate, should be swept in under a preponderance of the evidence standard by testimony given by an agent who has no independent personal knowledge of this case. I don't think that the commission intended for this to be how relevant conduct would be used, to sweep in this significant of an offense at such a low bar by evidentiary standards to enhance a sentence by triple. So I would ask this court to vacate and remand the district court sentence and remand for resentencing without application of the enhancement. Thank you very much, Ms. Tarleton. Your client certainly seems to me to be well represented. Thank you, Your Honor. Mr. Rickey? Yes, good morning, Your Honor. May it please the court, Evan Rickey on behalf of the United States. The government, Your Honors, this morning is going to ask you to affirm the judgment of the district court. And I want to begin by just going over some of the pieces of evidence that the district court relied on in terms of a finding that Mr. Huff, by preponderance of the evidence, was responsible for that shooting of Mr. Boyd. I want to focus on this one particular part of that. How can he find that he threw the weapon away? Your Honor, yes, Your Honor. I believe that what the district judge was... Go ahead. Right. Your Honor, I believe that the district judge was making an inference based upon the fact that that weapon was not subsequently found. And so that's how I view that, is him drawing a reasonable inference... But an inference, a permissible inference, has to be based on some facts, does it not? It does, Your Honor. And I do think the fact that the evidence showed that Mr. Huff, you know, fled the scene of the shooting, that when he was encountered a mere two weeks later driving the same kind of car that the witnesses said that he was driving on the day of the shooting and that he's found in possession of a different weapon, I think it's a reasonable inference based upon those pieces of evidence. And, Your Honor, so... It's almost like, since he didn't have the weapon, that he disposed of it. Yes, yes, Your Honor. It is an inference. It's based on the fact that he's guilty and he didn't have the weapon. So the court finds that he threw it away. That's right, Your Honor. That's how I read the record. That's how I understand that statement that was made by the district judge. But I do think it's important to emphasize some of the evidence that was before the district judge. I mentioned the dark-colored Lexus. Both Mr. Boyd and the other witnesses, including the mailman, talked about the suspect driving away in a dark-colored Lexus. That is, in fact, the car that he was driving on the day that he was arrested, on the day of the second incident. He was described as a light-complexioned black or Hispanic male with a braided hairstyle. Very significantly, Mr. Boyd, the shooting victim, initially told the Raleigh Police Department that the shooter was from New York. As we know, that identifying bit of information is corroborated from the defendant's criminal history, that he was a resident of New York, he was from Queens, talked again about the shoulder-length braided hair. And he gave enough information, Mr. Boyd did, the shooting victim, gave enough information for the Raleigh Police Department to be able to put up a photo array, to show him a photo array. And he, Mr. Boyd, identified Mr. Huff with 100% certainty. Now, as members of this panel have observed... The adversary there says that it was the third time that he looked at it. Yes, Your Honor, that is correct. But nevertheless, he made the identification. And one point that I think is important, you know, much has been made about the fact that the sole witness at the sentencing hearing was not the case agent involved in the investigation of that shooting. But there's nothing improper about that. Hearsay is allowed. Quite often we can, you know, the government actually invariably in sentencing will provide information on a hearsay basis through a summary witness. And so there's nothing at all improper about that. I would also say that since this was not a criminal trial, there was nothing preventing the defense from calling the law enforcement officers who put together the photo array, who questioned Mr. Boyd before he died. Now, they made a strategic choice not to do that because of the pending charges in state court. But I don't think that this forum ought to be used in order to re-litigate a lot of the issues that were litigated before the district court on a preponderance of the evidence standard. And, Your Honor, the other significant piece of evidence tying Mr. Huff to the shooting was the cell phone location data. And I want to emphasize here that the record shows that this was not cell tower location data showing that maybe he was in the vicinity. This was actual GPS coordinates showing him at the scene of the shooting on the 4,000 block of Green Road in Raleigh. And so that was sort of like the series of facts that the district court was looking at. So what the data would show is that his cell phone was at the location, not necessarily that he was there, right? Correct, correct. And, again, it's an inference in this day and age that we carry our cell phones with us, hold them tightly, you don't leave your house, maybe you have your keys, your wallet, and your cell phone. So, again, it is an inference that his cell phone was there. His car was there, again, the same car that he was driving the day that he was arrested. But Your Honor is correct. It is that his cell phone was there, not that he personally was there. For that, we have the identification of Mr. Boyd. And the other point I'd like to make, and I think this is an important one, what we see in the record, it's a very unclear picture of Mr. Boyd because it's been photocopied and scanned numerous times. Keep in mind the district court was looking straight at Mr. Boyd. This sentencing occurred over two separate days. The district judge was looking directly at Mr. Huff, and he could see to what extent does this man standing in front of me, does he match up with these descriptions that I'm hearing in testimony from the law enforcement officers. So in view of those bits of evidence, I don't think it can be said that it is clearly erroneous for the district judge to have relied upon that evidence. Certainly in a trial setting, there are plenty of arguments to be made, holes in the evidence, perhaps different inferences that can be drawn, all of those things that would happen in a trial setting. But that's not kind of the posture that we're in now. We're now looking back at what the district court did and asking, was it clearly erroneous for the district court to find, based upon these pieces of evidence, that that shooting was connected to the possession of the firearm for which Mr. Huff was charged. And I'd keep in mind with the Amerson case that has been cited by the defense, in that instance, you had a three-and-a-half-month gap. You also had a shotgun in one case, you had a pistol in the other. In one instance, you had Mr. Amerson being involved in a shootout. In another instance, you had possession of the firearms in Mr. Amerson's home. So the underlying facts are very, very different. Here we have a mere two-week difference. We have two pistols, different weapons to be sure, but both pistols. So I'm not sure how helpful Amerson is to the argument that the defense is making, given the different facts that we have. And finally, Your Honors, you all started out with the assumed-error-harmlessness issue. And I think that's a very significant point, because in its assumed-error-harmlessness discussion, the district judge talked at length about the 3553 factors. The district judge was deeply concerned about Mr. Huff's recidivist tendencies. As the record shows, he had a prior conviction in the Eastern District of New York for a Hobbs Act robbery. That Hobbs Act robbery involved Mr. Huff kicking and pushing an elderly man to the ground when they robbed the jewelry store. And we understand the fact that he got a lenient sentence because of his extensive cooperation. But I think what concerned the district court is that despite leniency, despite being indicted in federal court in New York, despite being convicted of a Hobbs Act robbery and getting a lenient sentence, he's not deterred, because he immediately returns to a life of criminality. So it is on that basis, again, putting aside this four-level enhancement. When you look at the assumed-error-harmlessness, when you look at the record that was before the district court in terms of why it varied upward, if you're going to look at this as a variance as opposed to an upward departure, it was his criminal history, his recidivist behavior, his repeated convictions for misdemeanor offenses, felony offenses, repeated failure to abide by the conditions of supervised release of parole, that sort of thing. That was another theme, if you could say, that was driving the court's decision to impose the sentence that it ultimately chose to impose upon Mr. Huff. And, Your Honor, we haven't touched very much on this question of criminal history. As part of the departure, there were two pieces of it. There was the upward departure based on 2K2B6B for use of this firearm in connection with another offense. But there was also the upward departure based upon the inadequacy of the criminal history. I've spoken at some length about this 2010 Hobbs Act robbery conviction in the Eastern District of New York. But there are other convictions as well, and sort of a series of antisocial criminal conduct that kind of continued all throughout Mr. Huff's life and in view of that, the district judge, we contend, did not abuse its discretion by varying upward to the sentence that it did in view of that criminal history. And, Your Honors, I still have some time, but I didn't have any additional points to make. But I did want to say, if there are no questions at this point. You don't have to use all your time, Mr. Governor. All right, Your Honor. Some lawyers like to sit in on that, Governor. Well, Your Honor, the final point that I would like to make is that I do think that the district, when you're looking at the assumed error harmlessness argument, I do think the district court's findings on that are owed some deference. And the court at length, I mentioned already the criminal history. The court talked at length about the need to incapacitate Mr. Huff. And the district judge said that it was a, quote, certainty, a certainty that Mr. Huff would reoffend. And so I think when you look at all of that from the assumed error harmlessness standpoint, I think the district judge did not abuse his discretion. I believe that his decision to depart upward is due some deference as you look at it in this forum. And I also think going back to the issue of the upward departure, again, looking at the pieces of the evidence, and again, evidence can always be contested. There's always a different argument to aid. That's what litigation, that's what the adversarial process is all about. But when you do look at the evidence that the district court had in front of it, I don't think it can be said that it was clearly erroneous for the district court to make the findings that it did, you know, based upon based upon the evidence that was in front of it. So let me just ask you a couple of factual questions. So what sentence did the government seek below? Was the district court's sentence consistent with that which the government asked for? It was, Your Honor. It was. It was 663 to 78 months is what the new guideline was. And the government asked for a sentence within that new guideline. And what was the statutory maximum? It's 10 years, Your Honor. OK, thank you. Thank you, Your Honor. If there are no further questions from this quarter in summary, I would just ask the members of this panel to affirm the judgment of the district court and appreciate your attention to this matter. Thank you. Thank you, Mr. Rickey. We appreciate it. Ms. Tarleton? Thank you, Your Honor. A few brief points. As the court is considering this case, I would urge you to consider what the effect of a ruling in favor of the government in this case would incentivize and ask yourselves, is there a floor as to what can come in as relevant conduct in these sentencing hearings? Here we know that there's at least one clearly erroneous factual finding by the district court, and it's a significant one that would indicate consciousness of guilt, and that's disposal of the weapon to obtain another weapon. A JA-99, that has no factual support. And I think it's very concerning to infer that if the district court already believed that Mr. Huff had committed the murder, it was OK for him to infer that he had been disposed of the weapon. I think that gets it exactly backward. I would ask this court to consider that this is an incredibly serious shooting. With respect to that finding, if we were to agree with you, could we simply just set that aside and say, based on the balance of the record evidence, that the findings with respect to your client's culpability, ultimate culpability for the shooting, is unchanged, and so that error is harmless? I don't think so, Your Honor, because we don't know that from what the district court said on the record. We don't know what exactly caused the district court to believe that Mr. Huff committed the shooting, but, in fact, that is the one thing that he cites at JA-99 in support of his conclusion that, quote, the defendant, Mr. Huff, did shoot Mr. Boyd on April 23, 2018. The next sentence is, he was not in possession of that gun on May 8, 2018, but he was in possession of another gun because he was aware of what he had done on April 23, 2018. He didn't cite Mr. Boyd. I think perhaps a fair inference of that is that there's sort of the district court supporting his finding with respect to related conduct by tying those two incidences together, the throwing away of the weapon and the purchasing of a new one, but that's separate from the finding of whether or not Mr. Huff actually committed the shooting. Those are two separate things, aren't they? I disagree, Your Honor. I think, as I mentioned, I do believe if it were proven it would be evidence of consciousness of guilt, and the fact that it directly follows the district court's conclusion that Mr. Huff did shoot Mr. Boyd is significant. The district court doesn't cite the statements or identification made by Mr. Boyd. That is not sort of what is motivating, at least based on this record, its determination that Mr. Huff shot Mr. Boyd, and so I don't think that this court has sufficient basis on the record to say that that clearly erroneous factual finding is in fact harmless. Again, if the district court believes that it can justify its sentence based on other factors, it's free to try to do that on remand, but I think that this court at least should give the court the opportunity to revisit that conclusion with the knowledge and the understanding that there was no evidence presented in the record to support it. I would also ask this court to consider that a shooting and murder is an incredibly serious offense that's being swept in to enhance a much milder offense of selling and possession of a firearm, and in that context, I think that the court needs to be particularly diligent about what kinds of evidence is presented. Here, I know the court asked about the cell phone records. Those records were not introduced in evidence at the sentencing hearing, and in fact, the testifying witness agent there hadn't even seen them, so he believed that they showed that Mr. Huff's cell phone was at the scene, but he hadn't seen them himself. He hadn't seen the photographic line-up himself. He didn't interview any of these witnesses. He didn't interview Mr. Boyd. He didn't interview Mr. Huff, and he hadn't even seen the first-hand statements made by any of these witnesses, and on this spin of a record, I think that this court is bound to vacate and remand for resentencing if for no other reason than to ensure that when these relevant conduct analyses are conducted, they are conducted with some integrity and with sufficient indicia of reliability to justify enhancing someone's sentence by triple what the advisory guidelines would otherwise recommend. So I would urge this court to think carefully about the consequences of a ruling in the government's favor in this case and to reinforce that even if the standard is lower than it is in a criminal trial, it still has teeth and that those minimum must be met before the district court is entitled to enhance a sentence. So we would ask this court to vacate and remand Mr. Huff's sentence. Thank you very much, Ms. Carlson. We appreciate it.  Thank you, Your Honor. Madam Clerk, we will take a brief pause and then we'll proceed to the third case. The court will take a brief break before hearing the next case.
judges: Robert B. King, James A. Wynn Jr., Albert Diaz